IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-3116-WJM-MJW

ABDUL KARIM HASSAN,

Plaintiff,

v.

THE STATE OF COLORADO and SCOTT GESSLER, in his official capacity as Secretary of State of the State of Colorado,

Defendants.

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Scott Gessler, in his official capacity as Colorado Secretary of State ("the Secretary"), and the State of Colorado, by and through undersigned counsel, hereby move to dismiss the Complaint for failure to present a justiciable case or controversy and failure to state a claim upon which relief may be granted.

### INTRODUCTION

This lawsuit is one of several that Plaintiff Abdul Karim Hassan has filed in various federal courts seeking access to the 2012 presidential ballot. The first of these lawsuits was dismissed by the United States District Court for the Southern District of New York, whose order was affirmed by the Second Circuit Court of Appeals. *See Hassan v. United States*, Case No. 08-CV-0938 (S.D.N.Y. June 15, 2010) (attached as Ex. A), *affirmed* 2011 WL 2490948 (2d Cir. June 21, 2011). Mr. Hassan also filed lawsuits in federal court in at least two other states – Iowa[1] and Montana[2] – at approximately the same time as he instigated the above-captioned

---

[1] *Hassan v. Schultz,* S.D. Iowa Case No. 04-11-cv-574.
[2] *Hassan v. McCullough,* D. Mont. Case No. CV-11-72-H-DWM-RKS.

1

litigation. On information and belief, motions to dismiss are currently pending in both the Iowa and Montana cases.

Each of Mr. Hassan's lawsuits challenges the "natural born citizen" clause of Art. II, § 1, cl. 5 of the United States Constitution, which, due to Mr. Hassan's status as a naturalized citizen, bars him from holding the office of the presidency. Mr. Hassan's basic contention is that the "natural born citizen" clause of Article II is unenforceable as the result of subsequent amendments to, and judicial interpretations of, the United States Constitution. In short, each of Mr. Hassan's lawsuits asserts that the "natural born citizen" clause has been repealed by implication.

In *Hassan v. United States,* filed in New York, Mr. Hassan raised his challenge to the presidential qualifications clause in the abstract, having "allege[d] virtually nothing in support of this ostensible intention to run for office and thus the likelihood that he might ever actually be impacted by the constitutional provision in question." *Id.* at *2. The district court dismissed the case on the merits; the Second Circuit affirmed on alternate grounds, holding that Mr. Hassan had failed to allege an injury-in-fact sufficient to satisfy the injury-in-fact requirement of Article III. *Id.* Subsequent to the issuance of the Second Circuit's opinion, Mr. Hassan, *inter alia*, sought and received an opinion from the Federal Election Commission regarding his eligibility to raise funds. *Federal Election Comm'n Advisory Opinion 2011-15*. In Colorado, Mr. Hassan contacted the Secretary's office to inquire as to his eligibility for the ballot. *See Complaint,* Ex. 1. The Secretary's response informed Mr. Hassan that he was ineligible for the ballot pursuant to C.R.S. § 1-4-303, which requires a prospective presidential candidate to affirm that he satisfies each of the requirements of the Presidential Qualifications Clause of Article II. Because "no court has held that any of the qualifications for the office of President as outlined in the U.S.

Constitution are invalid," the Secretary's response stated that he "must give effect to those requirements," and provided that any prospective candidate who fails to affirm his eligibility "will not be placed on the ballot in Colorado." *Id.*

Although Mr. Hassan's complaint advances several theories as to why he qualifies for the presidential ballot in Colorado, all of them relate to his claim that the Secretary's continued enforcement of the constitutional eligibility requirement is unconstitutional. Mr. Hassan seeks the following substantive relief:

- an order declaring C.R.S. § 1-4-303, Colorado's ballot access statute for unaffiliated presidential candidates, unconstitutional to the extent that it incorporates the "natural born citizen" requirement of the United States Constitution;

- a declaration that the "natural born citizen" clause has been "trumped, abrogated and implicitly repealed" by various provisions and interpretations of the Fifth and Fourteenth Amendments;

- a declaration that the Secretary has violated the Fifth and Fourteenth Amendments by virtue of his enforcement of the "natural born citizen" requirement; and

- an injunction barring the Secretary from enforcing the constitutional "natural born citizen" requirement

*See Complaint,* ¶¶ 42-45. As demonstrated below, however, Mr. Hassan is entitled to no relief at all based on these claims. To the contrary, because Mr. Hassan's claims are not ripe, and because they are in any event directly contravened by Art. II, § 1, his complaint should be dismissed for failure to present a justiciable claim or state a claim upon which relief may be granted.

**ARGUMENT**

### I.     Standard of Review

The legal sufficiency of a complaint is a question of law. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). At its most basic level, a complaint is legally sufficient if it contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10thCir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Twombly,* 550 U.S. at 556. Thus, to withstand a motion to dismiss, plaintiffs must include enough facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570.

Fed. R. Civ. P. 8(a) does not require detailed factual allegations, but it does require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Twombly,* 550 U.S. at 554. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id., quoting Twombly,* 550 U.S. at 557. Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 129 S.Ct. at 1951. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id., citing* Fed. R. Civ. P. 8(a)(2).

### II.     Plaintiff's claim is not ripe for review.

Federal declaratory judgment jurisprudence begins with *Aetna Life Insurance v. Hayesworth*, 300 U.S. 227, 241 (1937), which concluded that under certain circumstances a request for Declaratory Judgment can satisfy Article III's "case or controversy" requirement.

4

The basic considerations of standing, ripeness, and mootness apply to declaratory judgment actions.  The "federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues concrete legal issues, presented in actual cases, not abstractions are requisite. This is as true of declaratory judgments as any other field." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (internal quotation omitted).  Thus, "the test for determining an actual controversy by a declaratory judgment proceeding is whether there is a controversy between the parties having adverse legal interest of sufficient immediacy and reality to warrant issuance of declaratory judgment." Norvell v. Sangre de Cristo Dev. Co., 519 F.2d 370, 378 (10th Cir. 1975) (internal citations omitted).

"Ripeness doctrine is rooted both in the jurisdictional requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting [the court's] jurisdiction." *Alto Eldorado Partnership v. Cnty. of Santa Fe,* 634 F.3d 1170, 1173 (10th Cir. 2011).  The Tenth Circuit has acknowledged that a challenge to ripeness is "treated as a motion under 12(b)(1)" because it implicates the court's subject matter jurisdiction. *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir. 1999).  The Tenth Circuit has outlined a two-step test for evaluating ripeness.  First, the court must consider "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id., quoting* 13A Wright, Miller, and Cooper, *Federal Practice and Procedure*, § 3532 at 112. Second, the reviewing court considers "the hardship to the parties of withholding judicial consideration." *Id.* (internal quotation omitted).

In order to qualify for the presidential ballot as an unaffiliated nominee in Colorado, a prospective candidate must either submit a "statement of intent together with a nonrefundable filing fee…or a petition for nomination." § 1-4-303(1), C.R.S. (2011).  Whichever route a

5

prospective nominee takes, he must also "include either on the petition or with the filing fee the names of registered electors who are thus nominated as presidential electors." *Id.* The nominated electors must indicate their acceptance of the nomination. *Id.*

Here, although Mr. Hassan sought clarification from the Secretary as to his qualifications under § 1-4-303, he has not submitted a statement of intent. More importantly, although he does claim to have the filing fee prepared, his complaint does not allege that he has identified the required presidential electors or that any such electors have agreed to accept the nomination. Unless and until Mr. Hassan has taken that step, there is no certainty that he would meet the minimum qualifications to access the presidential ballot as an unaffiliated candidate in Colorado.

The hardship analysis requires a court to consider whether withholding judicial consideration "creates a direct and immediate dilemma for the parties." *Gonzales,* 64 F.3d at 1499 (internal quotation omitted). Here, there can be no such dilemma until Mr. Hassan alleges that he willing and able to satisfy all of the prerequisites for qualification for the presidential ballot pursuant to § 1-4-303. Because Mr. Hassan's claim is not ripe, this Court lacks subject matter jurisdiction over it. Mr. Hassan's complaint should thus be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### III. The "natural born citizen" clause has not been implicitly repealed by the Fifth or Fourteenth Amendments.

Even assuming *arguendo* that Mr. Hassan's complaint is ripe for review, it nonetheless fails on the merits because the challenged portion of the Presidential Qualifications Clause has not been implicitly repealed by subsequent constitutional amendment or judicial interpretation.

The "natural born citizen" requirement is one of three basic prerequisites – along with a minimum age of 35 and a minimum residency of 14 years – outlined in the Presidential Qualifications Clause of Article II, § 1, cl. 5 of the United States Constitution. Although no

6

aspect of the Presidential Qualifications Clause appears to have been previously subject to judicial challenge, the clause's "natural born citizen" requirement has been subject to criticism by the academic community for decades.  Among other things, it has been called "the Constitution's worst provision," Robert Post, *What is the Constitution's Worst Provision?*, 12 Const. Comment 191 (1995), and has been derided as "an inequitable and dangerous anachronism."  Sarah Helene Duggins & Mary Beth Collins, *Natural Born in the USA: The Striking Unfairness and Dangerous Ambiguity of the Constitution's Presidential Qualifications Clause and Why We Need to Fix It,* 85 B.U. L. Rev. 53, 134 (2005).  Various commentators have called for the clause's elimination via constitutional amendment, legislative interpretation, or court challenge.  *See, e.g.* Malinda L. Seymore, *The Presidency and the Meaning of Citizenship,* 2005 BYU L. Rev. 927, 969-995 (analyzing all three possibilities).  Most commentators have recognized that the language of Article II likely poses an insurmountable hurdle to a court challenge asserting repeal by implication. *See, e.g.* John Hart Ely, *Interclausal Immunity,* 87 Va. L. Rev. 1185, 1185-86 (commenting that because the natural born citizen provision is written into the constitution itself, "it would take a lunatic to argue that it is unconstitutional"); Seymore, *supra,* at 969 (arguing that the clause has been abrogated by the Fourteenth Amendment, but concluding "that some alternative means of overcoming the Clause may still be both practically and symbolically required").  Nonetheless, those commentators proposing court challenges have focused on theories of implicit repeal similar to those animating Mr. Hassan's complaint.  *See, e.g.* Lawrence Friedman, *An Idea Whose Time has Come – The Curious History, Uncertain Effect, and Need for Amendment of the "Natural Born Citizen" Requirement for the Presidency,* 52 St. Louis University Law J. 137 (2007) (arguing that "natural born citizen" clause is in

irreconcilable conflict with Fourteenth and Fifth Amendments). As discussed below, however, none of these theories is availing.

### A. The United States Constitution may not be repealed by implication.

Mr. Hassan concedes, as he must, that the "natural born citizen" requirement is written into the Constitution and is nowhere explicitly contravened in the constitutional text. Because the Presidential Qualifications Clause has never been the unambiguous target of a constitutional amendment, however, Mr. Hassan's only remaining angle is to contend that the qualification that he challenges here has been implicitly repealed by the application of judicial gloss to Fifth and Fourteenth Amendments.

Essential to Mr. Hassan's case, then, is the paradoxical suggestion that the judiciary may, absent explicit amendment, declare a provision of the Constitution unconstitutional. But in contrast to statutes and even state constitutions, which are on rare occasions subject to implicit repeal, the United States Constitution may only be altered by the proposal, consideration, and adoption of constitutional amendments pursuant to Article V. *See McPherson v. Blacker,* 146 U.S. 1, 36 (1892) (rejecting proposition that the Constitution may be "amended by judicial decision without action by designated organs in the mode by which alone amendments can be made"). Thus, modern cases uniformly agree that the judiciary lacks the authority to hold that a provision of the Constitution has been repealed by implication. *See, e.g., New v. Pelosi,* 2008 WL 4755414 (S.D.N.Y. Oct. 29, 2008) at *2 ("the Court, as interpreter and enforcer of the words of the Constitution, is not empowered to strike the document's text on the basis that it is offensive to itself or is in some way internally inconsistent") (internal quotation omitted); *Trinsey v. United States,* 2000 WL 1871697 (E.D. Pa. Dec. 21, 2000), at *3 ("[i]t is not the province of this Court to engage in constitutional amendment where it is asserted that part of the

document is unconstitutional"); *New v. Ashcroft,* 293 F.Supp.2d 256, 259 (E.D.N.Y. 2003) (dismissing challenge to electoral college system on the ground that "the electoral college cannot be questioned constitutionally because it is established by the Constitution"), *quoting Trinsey, supra; cf. Adams v. Clinton,* 90 F.Supp.2d 35 (D.D.C. 2000) ("constitutional text, history, and judicial precedent bar us from accepting plaintiffs' contention that the District of Columbia may be considered a state for purposes of congressional representation under Article I").

While the United States Supreme Court has never been directly presented with a challenge to the Presidential Qualifications Clause, its post-reconstruction opinions in immigration and naturalization cases have provided ample opportunity to comment on the "natural born citizen" requirement. In case after case, the Court's *dicta* has reaffirmed that the Presidential Qualifications Clause – by virtue of its incorporation into the text of the Constitution itself – stands apart from the other privileges and rights that are afforded to naturalized citizens, and is thus immune from constitutional challenge. *See, e.g. Schneider v. Rusk,* 377 U.S. 163, 165 (1964) (noting that "[t]he only difference drawn by the Constitution" between "the rights of citizenship of the native born and of the naturalized person" is "that only the 'natural born' citizen is eligible to be President"); *Knauer v. United States,* 328 U.S. 654, 658 (1946) (citizenship "carries with it all of the rights and prerogatives of citizenship obtained by birth in this country save that of eligibility to the Presidency") (internal quotation omitted); *Baumgartner v. United States,* 322 U.S. 665, 673 (1944) ("Under our Constitution, a naturalized citizen stands on equal footing with the native citizen in all respects save that of eligibility to the Presidency.") *quoting Luria v. United States,* 231 U.S. 9, 22 (1913).

In short, explicit alteration via Article V represents the only mechanism by which any of the Constitution's provisions may be repealed. *See, e.g.* Amendment XXI, § 1 ("The eighteenth

article of amendment to the Constitution of the United States is hereby repealed."),  Because judicial amendment of the Constitution is beyond the authority of the courts, Mr. Hassan has failed to state a claim upon which relief may be granted, and his complaint must therefore be dismissed.

> **B. Even assuming *arguendo* that the judiciary is empowered to announce a repeal by implication, the complaint does not demonstrate that the "natural born citizen" requirement has been implicitly repealed by the Fifth or Fourteenth Amendments.**

Mr. Hassan's complaint advances several different theories of repeal by implication, all of which derive from the foundational proposition that the "natural born citizen" requirement irreconcilably conflicts with the Fifth and Fourteenth Amendments.[3]  In particular, the complaint asserts that the Presidential Qualifications Clause violates these two Amendments and is thus rendered unenforceable to the extent that it unlawfully discriminates between "natural born" citizens and naturalized citizens.

As noted above, the Supreme Court has never invalidated a provision of the United States Constitution by applying the concept of implicit repeal.  Nonetheless, assuming that repeal by implication is possible in the constitutional context, established caselaw addressing implicit repeal of statutes and state constitutional provisions should provide appropriate analytical guidelines to the constitutional approach.  If anything, however, the strong presumption against implicit repeal should apply with even more force when considering the continued viability of the United States Constitution.

---

[3] Mr. Hassan's Fifth Amendment claim appears to derive from the substantive right to equal protection articulated in *Bolling v. Sharpe,* 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same constitution would impose a lesser duty on the Federal Government.").

10

"[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest." *Nat'l Ass'n of Homebuilders v. Defenders of Wildlife,* 551 U.S. 644, 662 (2007) (internal quotations and citations omitted, brackets in original). Accordingly, unless the sponsors of the Fourteenth Amendment clearly and manifestly intended that it apply to the Presidential Qualifications Clause, the doctrine of implicit repeal does not apply. However, the record of the debates surrounding the proposal and adoption of the Fourteenth Amendment fail to demonstrate a "clear and manifest" intention to repeal any aspect of the Presidential Qualifications Clause. Indeed, a review of the debates surrounding the adoption of both the Civil Rights Act of 1866 and the Fourteenth Amendment demonstrates that the legislators involved recognized that, after adoption of the Amendment, qualification for the presidency would be the only remaining difference between "natural born" and naturalized citizens. *See, e.g.* Statement of Representative Henry Raymond, Cong. Globe, 39th Cong., 1st Sess. 1266 (1866) ("There are only two classes of citizens, so far as I can detect, provided for in the Constitution of the United States. In the second article, I think, it is declared that none but a "natural born citizen" shall be President of the United States. That clause, and the one relating to naturalization, implying that the there may be naturalized citizens, are the only two clauses designating the classes of citizens within the contemplation of the Constitution of the United States."); *see also Cong. Globe,* 39th Cong., 1st Sess. 2901 (1866) (remarks of Senator Trumbull) ("The Constitution of the United States declares that no one but a native-born citizen of the United States shall be President of the United States. Does, then, every person living in this land who does not happen to have been born within its jurisdiction undergo pains and

penalties and punishment all his life, be[c]ause by the Constitution he is ineligible to the Presidency?").[4]

Additionally, in the context of statutory implicit repeal, "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Nat'l Ass'n of Homebuilders,* 551 U.S. at 663, *quoting Radzanower v. Touche Ross &Co.,* 426 U.S. 148, 153 (1978)).  This general rule has very clear application to the claims at issue here.  Whereas the Presidential Qualifications Clause deals with a narrow, precise subject, the Fourteenth Amendment was one of the three Reconstruction Era Amendments that were aimed at reuniting the Union and guaranteeing the civil rights of newly freed slaves.  The overarching goal of the Fourteenth Amendment was to override the Supreme Court's holding in *Dred Scott v. Sanford,* 60 U.S. 393 (1857), which had denied that slaves were citizens of the United States. *See McDonald v. City of Chicago,* 130 S.Ct. 3020, 3060 (2010) (Thomas, J. concurring) (the Fourteenth Amendment "unambiguously overruled [*Dred Scott*'s holding] that the Constitution did not recognize black Americans as citizens of the United States or their own State").  It was surely not designed to override any aspect of the Presidential Qualifications Clause, and due to the generality of its language cannot be declared to have done so implicitly.

Even assuming that the Constitution itself may be implicitly repealed by subsequent amendment or judicial interpretation, the strong presumption against repeal by implication is fatal to Mr. Hassan's claims in this case.  He is categorically unable to show that any aspect of the Fourteenth Amendment was designed to eliminate the distinctions drawn by Article II for the

---

[4] The Congressional Globe, which recorded the debates of Congress from 1833-1873, may be accessed in its entirety on the website of the United States Library of Congress: http://memory.loc.gov/ammem/amlaw/lwcglink.html.

narrow purposes of Presidential qualifications. Without this showing there can be no finding of implicit repeal, and Mr. Hassan's complaint should accordingly be dismissed because it fails to state a claim upon which relief may be granted.

## CONCLUSION

Based on the foregoing reasoning and authorities, the Defendants respectfully request that this Court dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.

JOHN W. SUTHERS
Attorney General

s/ *Matthew D. Grove*
MATTHEW D. GROVE, 34269*
Assistant Attorney General
Public Officials Unit
State Services Section
*Attorneys for Defendants State of Colorado and Colorado Secretary of State*

1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  303-866-5264
FAX:  303 866-5671
E-Mail:  matthew.grove@state.co.us
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2012, I served a true and complete copy of the within Motion to Dismiss upon all parties through ECF-file and serve or as indicated below:

Abdul K. Hassan, Esq.
215-28 Hillside Avenue
Queens Village, NY  11427

Email: *adbul@abdulhassan.com*

*/s Debbie Bendell*
Debbie Bendell