IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.    11-cv-03116-MJW

ABDUL KARIM HASSAN,

Plaintiff,

v.

THE STATE OF COLORADO and
SCOTT GESSLER, in his official capacity as Secretary of State of the State of Colorado

Defendants.

---

### ORDER ON
### MOTION TO DISMISS (DOCKET NO. 8) FILED BY DEFENDANTS STATE OF COLORADO AND SCOTT GESSLER
### CONVERTED TO A MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 26)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Initially, this case was before this court pursuant to an Order Referring Case

(Docket No. 2) issued by Judge William J. Martinez on December 2, 2011.  On May 1,

2012, the parties filed a joint motion consenting to the disposition of this matter by this

court (Docket No. 31).  Pursuant to 28 U.S.C § 636(c), Judge Martinez entered an order

granting the parties' motion and assigning the case for all purposes to this court (Docket

No. 32).  The case was reassigned on May 1, 2012 (Docket No. 33).

## PLAINTIFF'S ALLEGATIONS

Plaintiff Abdul Hassan alleges the following in his Complaint for Declaratory and

Injunctive Relief (Docket No. 1).  Plaintiff is a naturalized American citizen seeking

candidacy for the Presidency of the United States.  Plaintiff's candidacy was announced

in March 2008 through his website www.abdulhassanforpresident.com.  Subsequent to his announcement, plaintiff posted one or more Youtube videos regarding his candidacy and purchased nationwide advertising through Google linking to his presidential website.

In July 2011, plaintiff asked defendants the State of Colorado and Scott Gessler to rule on his eligibility for inclusion on the Colorado presidential ballot, in view of plaintiff's status as a naturalized American citizen.  In a letter dated August 12, 2011, defendants responded to plaintiff's inquiry.  Defendants stated that pursuant to Section 1-4-303 of the Colorado Revised Statutes, any individual seeking access to the presidential ballot is required to submit a notarized statement of intent and therein affirm that they meet "the constitutional qualifications for the office of the President as outlined in Article II, Sec. 1, Clause 5 of the U.S. Constitution: 1) 35 years or older, 2) at least a 14-year resident of the United States, and 3) a natural-born citizen of the United States." Defendants further stated that any individual who fails to check the three boxes affirming their eligibility, or who affirmatively discloses that they do not meet the requirements, will not be placed on the Colorado presidential ballot.  Due to plaintiff's status as a naturalized American citizen, plaintiff cannot sign the statement of intent under oath, and therefore cannot access the Colorado presidential ballot.

Plaintiff's single claim asserts violations of plaintiff's rights under the Equal Protection Clause, the Citizenship Clause, and the Privileges and Immunities Clause of the Fourteenth Amendment.  Plaintiff claims that the natural born provision of the U.S. Constitution is "irreconcilable with and is trumped, abrogated and implicitly repealed" by the aforementioned clauses of the Fourteenth Amendment as well as the Equal

Protection guarantee of the Fifth Amendment.  Plaintiff also argues that the natural born provision is invalid under the Absurdity Doctrine in light of current public policy concerns.  Plaintiff asks the court to: (1) declare § 1-4-303, C.R.S. unconstitutional under the Fourteenth amendment due to the natural born requirement; (2) declare that the natural born provision of the U.S. Constitution has been trumped, abrogated, and implicitly repealed by the Fifth and Fourteenth Amendments; (3) declare that defendants' refusal to accept plaintiff's filing of his declaration of candidacy because of plaintiff's national origin violates the Fourteenth Amendment; and (4) enjoin defendants from discriminating against plaintiff due to his national origin and/or status as a naturalized American citizen with respect to the presidential election ballot in Colorado.

## PENDING MOTION

Now before the court is defendants' Motion to Dismiss (Docket No. 8).  At the April 23, 2012 status conference, the parties agreed to convert defendants' Motion to Dismiss to a Motion for Summary Judgment, and the court so ordered.  On April 27, 2012, the parties filed a Stipulated Motion for Leave to Incorporate List of Stipulated Facts into Motion for Summary Judgment (Docket No. 28).  The court entered an order granting the parties' motion and deeming the facts admitted for the purposes of the Motion for Summary Judgment (Docket No. 30) on April 30, 2012.

The stipulated facts are as follows: 1) Plaintiff is a 2012 candidate for the Presidency of the United States; 2) Plaintiff is over the age of 35 years; 3) Plaintiff is a naturalized American citizen; 4) Plaintiff has been a resident of the United States for more than fourteen years; 5) Plaintiff is not a natural-born citizen of the United States; 6) With the exception of the "natural-born citizen" requirement, Plaintiff satisfies all of the

4

constitutional requirements for holding the Office of the President of the United States;

7) Colorado Secretary of State Scott Gessler ("the Secretary") is the chief elections

officer for the State of Colorado; 8) The Secretary is responsible for ensuring the

qualifications of candidates for statewide and federal elections; 9) Plaintiff contacted the

Secretary to inquire about Plaintiff's eligibility for the presidential ballot in Colorado; 10)

The Secretary responded in the letter attached to the Complaint (Doc. 1) as Exhibit 1;

11) In pertinent part, the letter stated that access to the Presidential ballot in Colorado

requires a prospective candidate to file a candidate statement of intent; 12) The letter

also stated that any individual "who affirmatively discloses that he or she does not meet

the constitutional qualifications for the office, will not be placed on the ballot in

Colorado."; 13) Among other things, the Candidate Statement of Intent requires the

prospective candidate to affirm his eligibility for office under penalty of perjury; 14) The

Secretary will not place a prospective candidate on the presidential ballot unless that

prospective candidate submits the Candidate Statement of Intent; 15) Plaintiff has not

submitted a Candidate Statement of Intent to the Secretary because he is unable to

affirm that he meets the natural-born citizen requirement of Article II, Section 5; and 16)

Plaintiff has not identified presidential electors for the 2012 general election.

Defendants argue plaintiff's claim is not yet ripe for review.  In addition,

defendants argue that the natural born provision has not been implicitly repealed by the

Fifth or Fourteenth Amendments because the U.S. Constitution cannot be repealed by

implication, and even if it could, plaintiff has failed to demonstrate that implicit repeal

has occurred.

The court has carefully considered the Complaint (Docket No. 1), the subject

motion (Docket No. 8), the response (Docket No. 16), and the reply (Docket No. 21).  In

addition, the court has taken judicial notice of the court's file, and has considered the

applicable Federal Rules of Civil Procedure and case law.  The court now being fully

informed finds and orders as follows.

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria,

149 F. Supp. 2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

nonmoving party points to must be admissible."  Adams v. American Guarantee &

Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  "The nonmoving party does not

have to produce evidence in a form that would be admissible at trial, but 'the content or

substance of the evidence must be admissible.'" Id.  "Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

'a third party's description of a witness' supposed testimony is 'not suitable grist for the

summary judgment mill.'" Id.

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response."  Southway, 149 F. Supp. 2d at 1273.  "The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported

allegations without 'any significant probative evidence tending to support the complaint'

are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.;

Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

"Evidence presented must be based on more than 'mere speculation, conjecture, or

surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at

1274.  "Summary judgment should not enter if, viewing the evidence in a light most

favorable to the non-moving party and drawing all reasonable inferences in that party's

favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

## JUSTICIABILITY

"Ripeness is a justiciability doctrine 'drawn both from Article III limitations on

judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  U.S. v.

Vaquera-Juanes, 638 F.3d 734, 736 (10th Cir. 2011) (quoting Reno v. Catholic Soc.

Servs., Inc., 509 U.S. 43, 57 n.18 (1993)).  The ripeness doctrine exists to prevent

courts "from entangling themselves in abstract disagreements" by avoiding "premature adjudication." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967).  Defendants argue that plaintiff's claim is not prudentially ripe; defendants do not address constitutional ripeness.  The court finds that constitutional ripeness is not an issue in this matter and therefore will proceed only with the prudential ripeness analysis.

Generally, two factors are utilized to determine if an issue is prudentially ripe: the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration.  Kan. Judicial Review v. Stout, 519 F.3d 1107, 1116 (10th Cir. 2008).  First, to determine the fitness of the issue, the court must "focus[] on whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed."  Id. at 1118.  Second, hardship exists if "the challenged action creates a direct and immediate dilemma for the parties."  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).

Defendants argue that plaintiff's claim is not fit because plaintiff's complaint fails to allege that he has completed all of the requirements under § 1-4-303, C.R.S. Specifically, the statute requires plaintiff to submit "the names of registered electors who are thus nominated as presidential electors" along with an indication from each elector as to their acceptance of the nomination.  Plaintiff's complaint makes no mention of nominated electors.  In addition, Defendants argue that there is no direct and immediate dilemma because plaintiff has failed to allege that he is willing and able to satisfy the electors requirement.  In other words, defendants argue that "there is no certainty that [plaintiff] would meet the minimum qualifications" set forth in the Colorado statute.  For support, defendants cite Gonzales and note that ripeness may depend on "whether the

case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  64 F.3d at 1499.

The Tenth Circuit Court's decision in Roe No. 2 v. Ogden, 253 F.3d 1225 (10th Cir. 2001), is instructive on this issue.  In Ogden, the plaintiff law school students challenged the constitutionality of a bar admission rule which authorized questions on the bar application regarding, among other things, the applicant's history of drug and alcohol dependency.  The defendants argued the students' claims were not prudentially ripe because none of the students had graduated or passed the bar.  Ogden, 253 F.3d at 1231.  However, in holding that the claims were ripe, the court stated that "while there is always the chance that the Students will not graduate or fail the exam, that contingency, in and of itself, is not sufficient to defeat ripeness."  Id. at 1232 (internal quotes omitted).  The court noted that the students had already taken substantial steps towards the disputed question by spending the time and resources required to attend three years of law school.  Id.  Further, a determination of the merits did not require the further development of facts; the court did not need to know whether the students would graduate and pass the bar in order to make a determination.  Id.

Here, plaintiff is in a similar position to the students in Ogden.  It is undisputed that plaintiff cannot sign the statement of intent, affirming he meets the natural born requirement, without committing perjury.  Plaintiff's claim is directed specifically at the natural born requirement; plaintiff is not challenging the other requirements found in the Colorado statute such as the electors requirement.  While it is true that plaintiff failed to allege that he could meet the electors requirement, the merits of plaintiff's claim turn strictly on a legal issue (i.e., the implicit repeal of the natural born provision) and does

not require the development of additional facts for its determination.   In addition, there

is clearly a direct and immediate dilemma for the parties.  The natural born provision

directly prevents plaintiff from appearing on the Colorado presidential ballot.  In order to

appear on the 2012 ballot, plaintiff must submit his statement of intent 155 days prior to

the general election.  This is a sufficiently immediate deadline.  Certainly it is possible

that plaintiff will be unable to meet the electors requirement.  However, in view of the

steps plaintiff has taken towards his goal, such as the creation of his presidential

website, the contingent or uncertain nature of plaintiff's ability to meet electors

requirement is not enough to defeat ripeness.  A determination can be made by this

court without knowing whether plaintiff can meet the requirement.  Accordingly, the

court finds that plaintiff's claim is ripe for review.

## IMPLICIT REPEAL

Plaintiff argues that a constitutional provision may be repealed through

implication by a subsequent constitutional amendment.  Repeal by implication is a rule

of statutory construction.  See Radzanower v. Touche Ross & Co., 426 U.S. 148, 164

(1976).  Accordingly, the court must first determine if rules of statutory construction

apply to constitutional interpretation.

The parties do not cite to, and the court cannot find, any cases directly

addressing the applicability of the rules of statutory construction to the Constitution.

Several commentators have suggested, in the context of the larger topic of the various

theories of constitutional interpretation, that the rules of statutory construction are

applicable.  See Robert G. Natelson, The Founders' Hermeneutic: The Real Original

Understanding of Original Intent, 68 Ohio St. L.J. 1239, 1246-49 (2007) (noting that

"[d]ebaters in the First Congress explicitly applied Anglo-American rules of construction to the Constitution"); Louis J. Sirico, Jr., <u>Original Intent in the First Congress</u>, 71 Mo. L. Rev. 687, 689-90 (2006) (finding "no suggestion that the rules of construction should be any different for a constitution than for a statute").  <u>But see</u> Kevin M. Stack, <u>The Divergence of Constitutional and Statutory Interpretation</u>, 75 U. Colo. L. Rev. 1, 3 (2004); Caleb Nelson, <u>Originalism and Interpretive Conventions</u>, 70 U. Chi. L. Rev. 519, 556 (2003) (noting that "members of the founding generation expressed a variety of different views" as to what rules of interpretation applied to the Constitution).

In addition, several commentators have noted Chief Justice Marshall's use of the common law rules of statutory construction in interpreting the Constitution.  Larry D. Kramer, <u>The Supreme Court 2000 Term Forward: We the Court</u>, 115 Harv. L. Rev. 4, 99 (2001); Bernard H. Siegan, <u>Separation of Powers & Economic Liberties</u>, 70 Notre Dame L. Rev. 415, 452 (1995); H. Jefferson Powell, <u>The Original Understanding of Original Intent</u>, 98 Harv. L. Rev. 885, 948 (1985).

The parties do not address this threshold issue concerning the applicability of the rules of statutory construction to constitutional interpretation.  Accordingly, the court will make no findings on this issue.  Nevertheless, the court will assume the rules of statutory construction, and thus implied repeal, are applicable to the Constitution for the purposes of this order.

The court notes that Article V of the Constitution provides an express method to amend the Constitution.  Even assuming the rules of statutory construction are applicable, it could be argued that the Framers did not intend the Constitution to be modified through means other than amendment, such as implied repeal.  However, as

11

plaintiff points out, the Supreme Court has recognized implicit modifications to the

Constitution absent express amendment.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456

(1976) (holding the Fourteenth Amendment partially abrogated Eleventh Amendment

sovereign immunity).

It is "a cardinal principle of statutory construction that repeals by implication are

not favored." United States v. United Cont'l Tuna Corp., 425 U.S. 164, 168 (1976).

Accordingly, implicit repeal will not be found absent clearly expressed congressional

intent. Branch v. Smith, 538 U.S. 254, 273 (2003).  "An implied repeal will only be found

where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act

covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" Id.

(quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936)).

Plaintiff argues that because the natural born clause facially discriminates on the

basis of national origin, it must be presumed invalid and the burden must shift to the

state to withstand the strict scrutiny test.  Further, plaintiff reasons that this presumption

of invalidity necessarily destroys the presumption against repeal, and therefore

congressional intent need not be shown.  Plaintiff cites City of Cleburne, Tex v.

Cleburne Living Center, 473 U.S. 432 (1985), for the proposition that the principles of

implied repeal are inapplicable when the earlier statute is discriminatory on its face.

The court finds no support for plaintiff's argument in Cleburne.  The portion of

Cleburne cited by plaintiff explains the applicability of the strict scrutiny test to statutes

challenged under the Equal Protection Clause; Cleburne does not involve implicit

repeal.  Plaintiff suggests that the applicability of the principles of implied repeal

depends on the content of the allegedly repealed statute. There is simply no authority

12

supporting plaintiff's contention that implied repeal and strict scrutiny interact in this

manner.  As plaintiff notes in his response to defendants' motion, plaintiff is not arguing

that the natural born provision itself is unconstitutional.  Accordingly, whether or not the

natural born provision discriminates on its face, a strict scrutiny analysis is not relevant

to plaintiff's challenge.  See Black's Law Dictionary 244 (8th ed. 2004) (defining "facial

challenge" as a "claim that a statute is unconstitutional on its face").  Plaintiff's challenge

is fully couched in his theory of implicit repeal.   Therefore, the court finds that the

presumption against repeal remains in effect.

To overcome the presumption against repeal, it must be shown that the

legislature had a "clear and manifest" intent to repeal the earlier statute.  Yellowfish v.

City of Stillwater, 691 F.2d 926, 928 (10th Cir. 1982).  "Moreover, silence in the

legislative history is insufficient to support repeal by implication."  United States v. Hahn,

359 F.3d 1315, 1322 (10th Cir. 2004).

Plaintiff argues that the Equal Protection Clause of the Fifth Amendment and

various clauses of the Fourteenth Amendment implicitly repealed the natural born

provision.  The court's analysis will make no distinction between plaintiff's Fifth

Amendment and Fourteenth Amendment equal protection arguments.  See Adarant

Constructors, Inc. v. Pena, 515 U.S. 200, 217 (1995) (stating that the Court's approach

to equal protection claims under the Fifth Amendment is precisely the same as the

approach under the Fourteenth Amendment).  Plaintiff does not provide any specific

arguments demonstrating congressional intent to repeal the natural born provision.

Plaintiff only cites to cases which discuss the Equal Protection Clause in more general

terms.  This absence of any showing of intent alone is likely enough for the court to hold

that plaintiff has failed to overcome the presumption against implicit repeal.  However, a quick discussion of congressional action (and inaction) regarding the natural born provision is enlightening on the issue of intent.

As noted in several articles, Congress considered and rejected several proposals to amend or repeal the natural born provision prior to, and shortly following, the ratification of the Fourteenth Amendment.  <u>See</u> Sarah Helene Duggin & Mary Beth Collins, <u>"Natural Born" in the USA: The Striking Unfairness and Dangerous Ambiguity of the Constitution's Presidential Qualifications Clause and Why We Need to Fix It</u>, 85 B.U. L. Rev. 53, 148 (2005) (citing H.R.J. Res. 269, 40th Cong. (1868) and H.R.J. Res. 52, 42d Cong. (2d Sess. 1871)); Malinda L. Seymore, <u>The Presidency and the Meaning of Citizenship</u>, 2005 B.Y.U. L. Rev. 927, 947 (2005) (citing H.R.J. Res. 166-169, 42nd Cong. (3d Sess. 1872) and S.R. 284, 41st Cong. (3d Sess. 1871)).  In addition, there is no mention of repeal of the natural born provision in the congressional debates on the Civil Rights Act or the Fourteenth Amendment.  <u>See</u> Seymore <u>supra</u>, at 986 (further noting that "there are only a few mentions of the Presidential Eligibility Clause during the debate on the Fourteenth Amendment, and they appear to be incidental").  This is strong evidence that the ratification of the Fourteenth Amendment was not intended to repeal the natural born provision.

Plaintiff also argues, in general terms, that the Supreme Court's interpretation of the Fourteenth Amendment has evolved since its ratification.  Plaintiff argues that the current view of the Fourteenth Amendment supports implied repeal of the natural born provision.  However, the continued consideration and rejection of proposals to amend or repeal the natural born provision contradicts plaintiff's position.  <u>See</u> H.R.J. Res. 59,

14

108th Cong. (2003); Duggin & Collins <u>supra</u>, at 149 (citing H.R.J. Res. 795, 90th Cong.

(1967)); Seymore <u>supra</u>, at 947 (citing S.J. Res. 161, 92d Cong (1971)).  More

importantly, these proposals are further evidence against an intent for the Fourteenth

Amendment to repeal the natural born clause.  <u>See</u> <u>Andrus v. Shell Oil Co.</u>, 446 U.S.

657, 666 n.8 (1980) (stating that subsequent congressional actions should not be

"rejected out of hand as a source that a court may consider in the search for legislative

intent," but warning that they "must be weighed with extreme care").

Based on the above, the court finds that plaintiff has failed to show a clear and

manifest intent for the Fourteenth Amendment to repeal the natural born provision.

Accordingly, the court finds that the natural born provision has not been implicitly

repealed.

**THE ABSURDITY DOCTRINE**

Plaintiff argues that the natural born provision is invalid under the Absurdity

Doctrine in light of current public policy and Supreme Court precedent.

The Absurdity Doctrine is a rule of statutory construction which states that

"interpretations of a statute which would produce absurd results are to be avoided if

alternative interpretations consistent with the legislative purpose are available." <u>Griffin v.</u>

<u>Oceanic Contractors, Inc.</u>, 458 U.S. 564, 575 (1982).  The doctrine is applicable "only

when it would have been unthinkable for Congress to have intended the result

commanded by the words of the statute - that is, when the result would be 'so bizarre

that Congress could not have intended it.'" <u>Robbins v. Chronister</u>, 435 F.3d 1238, 1241

(10th Cir. 2006) (quoting <u>Demarest v. Manspeaker</u>, 498 U.S. 184, 190-91 (1992)).  It is

not enough to show that the result is contrary to congressional desire.  <u>Id.</u>

15

Assuming, as the court does above, that the rules of statutory construction apply to constitutional interpretation, the court cannot find that the Absurdity Doctrine acts to invalidate the natural born provision.  Certainly the result of the provision is not so bizarre that Congress could not have intended it; there is ample evidence that the natural born provision was intended, at least in part, to prevent naturalized citizens such as plaintiff from qualifying for the Office of the President.  See Seymore supra, at 933-41 (tracing the origins of the natural born clause and stating it was "motivated by fear that foreign-born, naturalized citizens' loyalty could not be assured"); Lawrence Friedman, An Idea Whose Time has Come - The Curious History, Uncertain Effect, and Need for Amendment of the "Natural Born Citizen" Requirement for the Presidency, 52 St. Louis U. L.J. 137, 141-43 (2007) (stating that naturalized citizens were not intended to be eligible under the natural born provision).  Indeed, the very fact that Congress has consistently rejected proposals to amend or repeal the natural born provision argues against any suggestion that the result of the provision is absurd.  In addition, even assuming subsequent actions by Congress, such as the ratification of the Fourteenth Amendment, demonstrate a desire for a different result, this is not enough to invalidate the natural born provision under the Absurdity Doctrine.

Accordingly, because the natural born clause has not been implicitly repealed, nor is it invalid under the Absurdity Doctrine, Colorado state laws requiring all presidential candidates to affirm that they are natural born citizens are constitutional.

16

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment is **granted**.


Pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCiv.R. 54.1 defendants are

entitled to costs**.**  A bill of costs must be filed on the appropriate form within 14 days of

the date of this order.


Date:  May 3, 2012                          s/ Michael J. Watanabe_____
        Denver, Colorado                    Michael J. Watanabe
                                 United States Magistrate Judge